George BEBAN II, Plaintiff,

v.

DECCA RECORDS, INC., et al., Defendants.

No. 20671.

United States District Court
S. D. California,
Central Division.

Jan. 28, 1959.

Charles A. Prince and Robert M. Maslow, Beverly Hills, Cal., for plaintiff.

Averill C. Pasarow, Los Angeles, Cal., for defendants.

HALL, District Judge

After trial, Findings of Fact, Conclusions of Law and Interim Order of Reference, the defendants filed a Motion to set aside and vacate the Findings of Fact, Conclusions of Law and Interim Order of Reference, and to dismiss the Complaint.

The substance of defendants' contention is that plaintiff's dramatic work "The Sign of the Rose" was copyrighted on *June 12, 1909,* and that the Copyright Act of *March 4, 1909,* did not become effective until *July 1, 1909,* 17 U.S.C.A. § 1 et seq.; that under the Copyright Act in force prior to the effective date of the Act of March 4, 1909, dramatic works were not protected against reproduction by a mechanical means such as a phonograph record, and that the renewal of plaintiff's copyright under the Act of March 4, 1909, did not give plaintiff the benefit of the terms of that Act.

Defendants' reasoning is based upon White-Smith Music Co. v. Apollo Co., 1907, 209 U.S. 1, 28 S.Ct. 319, 52 L.Ed. 655, and the cases stemming therefrom.

Assuming, but not deciding, that defendant's contention that the renewal under the 1909 Act of a copyright previously secured did not give the benefit of the 1909 Act to such previously-secured copyright, I do not find any validity in defendants' contentions based upon the White-Smith case, supra.

That case involved a copyrighted piece of sheet music which was put on perforated piano rolls, and the Supreme Court held that under the Act then in force—33 Stat. 1000, § 4952 Rev.Stat.—the owner of a copyright of a musical composition was not protected against the mechanical reproduction of music on perforated piano rolls, a means of mechanical reproduction.

Section 4952 Revised Statutes, in force prior to the Act of March 4, 1909 (33 Stat. 1000), reads as follows:

"Sec. 4952. The author, inventor, designer, or proprietor of any book, map, chart, dramatic or musical composition, engraving, cut, print, or photograph, or negative thereof, or of a painting, drawing, chromo, statue, statuary, and of models or designs intended to be perfected as works of the fine arts, and the executors, administrators, or assigns of any such persons shall, upon complying with the provisions of this chapter, have the sole liberty of printing, reprinting, publishing, completing, copying, executing, finishing, and vending the same; *and, in the case of a dramatic composition, of publicly performing or representing it, or causing it to be performed or represented by others.*" (Italics supplied).

The first clause down to the semi-colon in the above section was the only portion involved in the White-Smith case and construed by the Supreme Court; and while in the first portion of that clause the words "dramatic or musical composition" are used, nevertheless the latter portion of the Section following the semi-colon, gives greater protection to a dramatic composition than to a musical composition. It gives to the proprietor of a dramatic composition not only the right of publicly performing it, but also the right of "representing it, or *causing* it to be performed or *represented by others.*" This is in keeping with the historic protection given to dramatic compositions over musical compositions in the various Copyright Acts previously adopted by Congress.

The Copyright Act of February 3, 1831 (4 Stat. 436) did not mention dramatic compositions. Apparently whatever protection was given them was given them by Section 9 of the Act relating to the publication of a "manuscript." The first

protection given to "dramatic" compositions, by that term, was by the Act of August 18, 1856 (11 Stat. 138) where there was granted to the author or proprietor of any dramatic composition the sole right to print and publish it, and the sole right "to act * * * or *cause* it to be acted, performed, or *represented, on any stage or public place"* during the period of the copyright.

The general revision of the Patent and Copyright laws of July 8, 1870 (16 Stat. 198) introduced the language by Section 86 (16 Stat. 212) of that Act in the same language as it is found in the last clause of the Statute relating to dramatic compositions contained in Revised Statutes Section 4952 as set forth in the Act of March 3, 1905 (33 Stat. 1000).

The contrast in the language between the Act of July 8, 1870 (16 Stat. 212) and that in the Act of August 18, 1856 (11 Stat. 138) makes it apparent that Congress intended to increase the protection given to the owner of a dramatic composition by eliminating the language *"on any stage or public place"* and inserting the much broader language to include the right to prohibit anyone from *"causing it to be performed or represented by others"*, thus enlarging the right of the owner of a dramatic composition from the right to prevent its performance or presentation *only on a stage or publicly,* to the right to prevent anyone from causing it to be performed or represented by others *at all.*

Moreover, the Supreme Court in Buck v. Jewell-LaSalle Realty Co., 1931, 283 U.S. 191 at pages 200–201, 51 S.Ct. 410 at page 412, 75 L.Ed. 971, flatly held that the reproduction of audible sound waves by a phonograph record "amounts to a performance."

The short of it is that musical compositions were protected from being *copied,* under the law in force prior to the 1909 Act, but they were not protected, as dramatic compositions were, from being *performed* or *represented,* or from being *caused* to be *performed* or *represented by others,* by any means, including phonograph records.

From the foregoing analyses of the Act in force prior to the Act of 1909, it is evident that Corcoran v. Montgomery-Ward, 9 Cir., 1941, 121 F.2d 572, certiorari denied 314 U.S. 687, 62 S.Ct. 300, 86 L.Ed. 550, which involved a poem set to music and put on phonograph records, is not in point; nor is M. Witmark & Sons v. Standard Music Roll Co., 3 Cir., 1915, 221 F. 376, which, like the White-Smith case, supra, involved the reproduction of a musical composition on perforated piano rolls.

For the foregoing reasons, defendants' motions are denied.